The case on the docket is 525-0667 Tequila Brewster v. Proximo Spirits et al. Mr. Seidel, welcome to the 5th District. Thank you, Your Honor. I hope your job is here order okay. Probably. All right, you have been told about the time limitations? Yes, Your Honor. Okay, you may proceed when you're ready. Thank you, Your Honors. Counsel, and may it please the Court, Charles Seidel for Defendant Appellant, Proximo Spirits, Inc. Plaintiff advances a theory of liability under the Gramshot Act that would subject all manufacturers, all importers, all wholesalers, and all distributors of alcohol in the State of Illinois to strict liability for all injuries caused by nearly all intoxicated individuals in the State. This novel theory is inconsistent with the Act's text, structure, and history, and it cannot be reconciled with eight decades of consistent precedent from this and other Illinois courts holding that a defendant is liable under the Gramshot Act only where it directly sold alcohol to the intoxicated individual or had knowledge that the individual would be drinking. The complaint here alleges neither. Plaintiff does not ask the Court to depart from the numerous cases proposing her claim against Proximo. Instead, she asks the Court to completely reimagine the carefully calibrated scheme by which the Legislature has chosen to regulate alcohol. But this Court has held time and time again that changes to the Act must come from the Legislature itself. The District Court was wrong to accept Plaintiff's invitation to rewrite this statutory scheme. This Court does not need to break new ground to resolve this case. It only needs to apply the rule Illinois courts have followed for decades. The Court should reaffirm its precedents and answer the certified question in the negative. I'm happy to answer the Court's questions or to begin with a discussion of the decades of Gramshot Act cases that clearly resolve this case. Since at least 1945, Illinois courts have consistently required a direct nexus between a defendant's sale of alcohol and the allegedly intoxicated person's intoxication. In Blackwell, the First District held that a tavern owner could not be held liable for the intoxication of the roommate of a customer who had no connection with the tavern. Over the past 80 years, courts, including this one, have acquired this basic rule to limit liability to retailers that were directly responsible for individuals' intoxication. These cases uniformly hold that a seller of alcohol is liable under the Gramshot Act only if it sells directly to the intoxicated individual or if it knows or should have known that the intoxicated individual will consume the alcohol. This knowledge requirement demands more than a generalized knowledge that alcohol will be consumed generally. It requires knowledge that a specific person or group of people will be drinking. So, let me ask you a question. Is there any history in the Gramshot Law that defines how the alcohol will travel from someone like the distributor to the end user? I don't believe that that legislative history is contained in the Gramshot Act, but that regulatory regime is the three-tier regime that is contained in the Liquor Control Act more generally. And in that situation, a Tier 3 manufacturer or importer, like Proximo, can only sell to a distributor. And those distributors can only sell to a retailer, like Circle Shop here, the convenience store, and those retailers can only sell to consumers. So a Tier 3 manufacturer, like Proximo, places alcohol in the stream of commerce but can't sell to the alleged drug driver here or even the convenience shop that sold him the alcohol. So Proximo is multiple steps removed from the actual sale, from being able to control that consumption of alcohol by consumers down the line. It simply introduces the alcohol in the stream of commerce. That's the only connection to the alcohol in this case. But didn't you just define that one of the methods for imposing liability is if the alcohol is introduced to the end user not by a direct sale but by an indirect sale? So I think there are two lines of precedent, two lines of cases that courts have recognized can satisfy the direct nexus. There are the direct sale cases, which are the most straightforward. And then there is a set of other cases in which courts have recognized that if a dram shop sells alcohol to someone and then that person transfers that alcohol to someone else but that the tavern owner had knowledge of that specific other individual or group of individuals to which that person belongs, in those cases it doesn't make any sense to excuse the dram shop owner of liability. And so cases like Bennett, for example, are a good example of where this applies, where in that case a tavern owner was alleged to have sold alcohol to a man who was the companion of a woman. The woman was the person who ended up being intoxicated and ended up allegedly harming the plaintiff in that case. And just because she didn't actually pay for or purchase the alcohol directly from the tavern, the tavern wasn't excused from liability when they were serving the alcohol to the companion. In all of these cases, including Kate, we're talking about situations in which it was at the very least alleged that there was some connection between the person who was selling the alcohol to a consumer and the person who was actually consuming the alcohol, that it would make sense to impose liability on the tavern owner. Which also applies up to the knowledge portion of that. Yes, Your Honor. Yeah, I think the connection in this case mostly would be satisfied either by direct sale or the knowledge. And so in cases where there's simply no allegation in this case that Proximo had any knowledge of the alleged junk driver, there's certainly no allegation that Proximo was involved in the sale, and it couldn't have been under the three-tier system. Has knowledge ever been equated with foreseeability? So I have seen, I have not seen the word knowledge equated with foreseeability in these cases. I've seen discussions in commentary and in some of the earlier cases discussing this in terms of similarity to proximate cause, and of course proximate cause involves foreseeability. The 1971 comment that the Supreme Court relies on, sorry, the 1970s comment that the Supreme Court relies on an indication to discuss the 1971 amendment discusses it in those terms. I think that, you know, to the extent that folks have talked about it in terms of foreseeability, they've consistently required that it be foreseeable that a specific individual or a specific group of individual is consuming the alcohol. It can't be the case that because Proximo expects someone to drink the alcohol itself, then that necessarily will result in liability for every sale. The result of that would be strict liability for every sale of alcohol by every manufacturer and every distributor in the state of Illinois, with no way for them to avoid liability, unlike a dram shop owner who could theoretically cut someone off before they became intoxicated. And we know that's not a result of the legislature intended here. We know that for several reasons. One is that in the 80 years since courts have articulated this principle, the Dram Shop Act has been amended more than a dozen times, and the legislature has never seen fit to do anything to question this consistent holding. And that creates a strong presumption of legislative adoption. But more directly, we know that in 1971, the legislature amended the Dram Shop Act to remove the words in whole or in part from around the causes. And they did that, Kingston tells us, to curb widespread abuse that proliferated in the system under the previous but-for-cause regime that some courts had recognized before 1971. And in those situations, what was happening was plaintiff's attorneys were just joining every possible dram shop that they could, and then a year down the line, which was statute of limitations, no one could prove whether or not this person had any alcohol or no alcohol at their dram shops on the relevant day. And everyone just settled these cases because litigation was expensive, and the cost of dram shop insurance skyrocketed, and dram shops were going out of business. And so to fix this problem, to curb these abuses, the legislature got rid of the but-for-causation language to narrow the set of people who was liable under the Dram Shop Act to exclude those whose connection to the eventual intoxication was too attenuated or remote to justify liability. And if a dram shop at which someone was drinking a couple drinks before they got intoxicated is too attenuated and remote to be liable, it really makes very little sense to think that the legislature would have intended for all manufacturers and all distributors to be liable in every case, and that would be the result here. I think plaintiffs admits that much under their theory. Counsel, so the Illinois Supreme Court rejecting social post liability stated in its sentence that it was for the legislature to study and determine through an amendment to the Act whether or not to extend the Act to apply to that situation. Wouldn't that same rationale apply here? Yes, Your Honor. I think the courts have held consistently that any change in liability needs to come from the legislature. There was no common law cause of action in these circumstances. The legislature created a limited one, the Dram Shop Act, and it's consistently held that because of the penal character of the Dram Shop Act and opposing strict liability, it needs to be narrowly construed, and any expansion of the group of people who is liable needs to come from the legislature. And there's no indication in any of the legislative history that the legislature ever intended to expand it to include the category of manufactured distributors. That result is inconsistent with the text of the statute, inconsistent with the court's precedent, and it's inconsistent with a three-tier regime under which, again, manufacturers, when they're standing in their licensed lane, simply cannot interact with consumers of alcohol. They have no mechanism by which to curb the intemperate use of alcohol, consumption or use of alcohol, which was the entire purpose of the Dram Shop Act. So for that reason, it just simply doesn't make any sense to impose liability here. You said the purpose of the Act is to not allow for repeated intoxications? I think the court's construing that the purpose of the Act in Dworak and then in Wessel, which we cite in our brief at pages 12 and 16, or probably pages 12 and 16, have held, have construed the purpose of the Dram Shop Act to be to control the intemperate consumption of alcohol by imposing liability on those who fail to discourage the intemperate consumption of alcohol. And because manufacturers, unlike a bar who's serving new alcohol, have really no mechanism by which to curb the intemperate consumption of alcohol beyond ceasing the sales of alcohol entirely, the legislature simply didn't mean to include them within the scope of people who are liable under the Act. Is that the public policy argument for the State of Illinois for the purpose of the Dram Shop Act? So the Dram Shop Act contains an express legislative purpose. I think that to the extent that those, that purpose is relevant, as courts have construed it, you know, as I just discussed, it's limited to those who actually could potentially curb liability. But I don't think that that policy argument or the policy argument in the philosophical expression that there should be a remedy in the Constitution can plausibly override the decades of statutory, or the decades of statutory interpretation and the plain text of the Act. I think the general principle, as Dr. Rogers was explaining, that expansions of wide load in the Dram Shop Act need to come from the legislature, cleanly resolve this case. And I think it's notable that plaintiff doesn't address these cases, doesn't seek to ask the court to depart from them, doesn't address the standard of showing that good cause is required. But the rule is clear from these cases that some direct connection to intoxication is required and that something as attenuated as having sold the alcohol in the stream of commerce can't satisfy that. And I mean, the limits of plaintiff's theory are difficult to discern, because just as Proximo put the tequila in the state of commerce, in the, sorry, in the flow of commerce, the agave producers and wherever the agave was grown were the agave that became the tequila, and the distillers distilled that agave into tequila. And so everyone, all the way up the chain, a countless number of individuals and corporations in each of these cases would immediately become liable for insuring the entire alcohol industry in Illinois. And we know that that is not something the legislature intended. So, you know, for all those reasons, we would ask that the court answer the certified question in the negative. And because the complaint here contains absolutely no allegation of any connection between Proximo and the sale of alcohol to an allegedly intoxicated individual, we'd ask for the court to explain that this complaint fails to a matter of law. No further questions?  Okay. Thank you, Your Honor. Thank you. You will have a few minutes to reply. Thank you. Okay. Let's hear from the plaintiff. Mr. Edelson? Yeah. Okay. Please report, counsel. Josh Edelson on behalf of Plaintiff Pele. So the question before this court, as approved by the trial court on the certified question, was simply whether or not a licensed distributor or wholesaler like Proximo may be liable under the Dram Shop Act. Not all this stuff about whether this is an indirect sale or a direct sale or not. And I'll get to that in a little bit. What does the word may mean? Well, is it a potential party that can be sued under the Dram Shop Act? Not saying whether or not it's liable for that intoxication and that injury, but is it a potential responsible party as a licensed seller? Well, you wouldn't sue somebody unless they had potential liability. Correct. And that basis is what I was going to get to. So under the Dram Shop Act, so the answer to this question actually doesn't lie in the case law at all. And this is actually admitted by the appellants in their brief that there is no direct answer to this question. So therefore, we look to the Dram Shop Act, the plain language of the Dram Shop Act. And that's where you find the answer, which states that every person who was injured within this state, and that's what we had here, a death of a child in a drunk driving accident, by any intoxicated person, the drunk driver, Demetrius was drunk, has the right of action in his or her own name, severally or jointly, again, any person licensed under the laws of this state, which Proximo was, and which is why agave sellers and producers, for example, would not clearly be liable because they're not licensed to sell under the laws of the state of Illinois. Licensed to sell liquor, that is. Or of any other state, sell alcohol, liquor, who by selling, and I'll get to the definition of selling soon, or getting alcohol, liquor within or without the territorial safety limit causes the intoxication of such a person. So here, Proximo's liquor clearly caused the intoxication of the drunk driver, who also was the purchaser. The Act then goes on to specifically define what a sale is. A sale means any transfer, exchange, or barter in any manner or by any means whatsoever, including the transfer of alcoholic liquors by and through the transfer or negotiation of warehouse receipts or certificates, and includes the means of all sales made by any person, whether principal, proprietor, agent, servant, or employee. The term sale includes any transfer of alcoholic liquor from a foreign importer's license to an imported distributor's license, even if both licenses are held by the same person. Reading that together, the plain and unambiguous language of the statute fits in this situation. Proximo meets all criteria. How do you get around the case law in Illinois, beginning with Welch versus convenient food line? Yeah, so Welch is, again, an indirect sale case. When you say indirect sale, what do you mean? Sure, yeah, that's a good clarification. So an indirect sale would be when the dram sells the liquor or serves the liquor to someone who ultimately doesn't consume but then gives it to someone else at some point in time. That's actually not what happened here. No, but you still have a direct sale from a dram to an individual. Right, but the individual who bought or purchased the liquor is not the person who consumed or became intoxicated but then gave it to someone else. Okay, but the line of cases that I'm looking for are the line of cases discussed by Mr. Seidel. Is that right? Yes. Let's say there has to be a direct sale to the defendant, to the intoxicated person, or the seller knew or had reason to know that the specific intoxicated person in question, not just the unspecified absent person, will be drinking. Right. How do you get around that? Yeah, so in the indirect sale cases, that's actually an extension of liability. It's an extension? It is an extension because what happened in a case back in the 1950s was that I was buying drinks at a bar and my buddy was taking all the shots and getting drunk and went out and got into an accident. Drams, before that case, were alleging, well, I didn't actually sell directly. It was a cheeky way of getting around and saying, well, I didn't sell directly to him, but of course he was in the presence. And then in a direct sale case, which I think this case, I mean, the question before wasn't about indirect and direct sales, so that's why the briefing isn't exactly on point, but I would take the position that this is a direct sale case. Proximo is in vertical privity with the seller and the purchaser. The purchaser was the one who ultimately became intoxicated and killed my client. That is not what an indirect sale case is. An indirect sale case is a sale that's made to a person who's not licensed and given to someone else at some different point in time. In certain scenarios, that is allowed to go forward against a dram if it's within their presence and there's a knowledge, and it's not allowed to go forward if at some point later on, maybe a year down the road, they hand the liquor off. That's not the scenario here. This is a purchase, and that purchaser, in a way, Proximo is getting a profit off this purchase. They're in the line. How would this work practically speaking? If a drunk driver, the alleged intoxicated person, is found in the vehicle with a bottle of Jack Daniels and there's no other way to prove where he bought it, this would enable then the plaintiff to sue Jack Daniels. Correct. That's the exact scenario that happened here. This would be an issue of first impression for this court because it's not been decided anywhere else in this state. Correct. I go back to the Supreme Court case rejecting the argument for social host liability, and there were public policy considerations raised as to why that liability should exist, but the Supreme Court ultimately determined this was for the legislature to study and then amend the act. Why is this different? Why is this not a legislative function? I would answer that with that the legislature has contemplated a distributor's liability because if you go further, and I was going to get to this point, if you go further down the Dram Shop Act section, you get to a curious spot where it talks about if a licensed distributor is named and their only connection to the intoxication is that they provided an apparatus upon which the alcohol was used to get consumed, like a keg or a cup or something, they shall be dismissed, which means that by carving out this limited exception, we believe that the legislature has demonstrated its intent to impose liability on distributors and brewers in all other circumstances, or else why would that clause even be there? It would be superfluous. So by not saying... Wait a minute. How would it be superfluous if you go to the local liquor store and you buy a keg and you just take it and get drunk and you hurt somebody? Why is that superfluous? Well, against the retailer that sold the keg, of course, but the Dram Shop says at the bottom, if a licensed distributor or wholesaler is named and their only connection to the drinking is that they provided some sort of apparatus upon which the intoxicated person was able to drink, so my example was a keg. It could be a tap or something. They shall be granted a motion to dismiss. But by carving out that exception, that means that they could have said there that licensed distributors can't be held liable at all in any circumstance, but they did not. So by leaving that out, I think it's clear that they intended to leave situations like this in. They created a deposit. Correct. Okay. Correct. Or at least that's what we believe. You also argue public policy in your brief. Yes, so public policy would be... Is that the business of the courts? Well, so the public policy is more of a response to their public policy arguments, but... But you don't expect this court to rule based on public policy. No, I do not. Okay. But I think that the Dram Shop Act in Illinois is actually Dram-friendly. It's a strict liability statute that provides liability caps that I find impossible to put a business like Proximo out of. I mean, in a horrible death case, the most you can get is $190,000. And in an injury case, it's $90,000. So I find it hard to believe that that's going to prevent all the big liquor companies from selling in the future. But this is a scenario in which the only two people that could have known where the liquor was bought were in the car. One is dead. The other is sitting in jail waiting trial and will never talk to us, and we've tried. So we're left with, you know, there has to be a bottle in the car, and this is the best shot we have at getting justice for this family. And, you know, the Dram Shop Act does say that this is in place to regulate what they call, it's an older term, the evils of the liquor traffic of the trade. And these things happen from time to time, but this is why we have a statute like this in place to make sure that people of Illinois don't go uncompensated in situations like this. I do want to point out two things. One, I did come across a case recently. I don't know how it was missed. It's Peterson. It's actually mentioned in Welch. Are you citing a case for the first time now? I mean, are you citing it because the other side needs to know? I think the other side needs to know, but perhaps maybe left it out for reasons that are... All right, do you want to cite a case to this court? Sorry. Do you want to cite a new case that's not your brief to this court? Yes, I do. Okay. You would have to normally do that by motion, but we will let you do that, but we have to give the other side an opportunity to respond. Okay. What is the case you want us to consider? Peterson. Peterson. The site would be... So it's contained in Welch. Where's the site? I apologize. It's okay. Check it out. Oh, here it is. Okay. Peterson v. Jack Donaldson Sales Company, 4 Illinois App, APP.3D. Wait, wait. 4 Illinois Appellate. 3D792, and it's from 1972. So 4 Illinois Appellate, 3rd 792? Yes. Okay. Mr. Seidel, do you need some time to respond, or are you familiar with that case? No, I have not.  Do you want the opportunity to respond to this argument, or no? You will be able to come back and respond naturally, but do you want a writing? I can address it. Okay. Very good. Thank you. All right. Thank you. So this was listed as one of the exceptions to the rule in Welch and one of the indirect cases, but more specifically, this Jack Donaldson Sales Company was a wholesaler, and they were ultimately found to be a liable party under DRAM. In this case, Jack Donaldson Company, the wholesaler, provided a bunch of beer and some other things to a union that ultimately was using it at a union picnic, so they bypassed the retailer. So they gave it directly to the consumer rather than it go through the proper channel through the retailer.  So that's going to be distinguishing. So then the union then sold it to its members at the picnic, and one of the members became intoxicated, went out, and got into an accident, and either killed someone. So they did bring a lawsuit against Jack Donaldson, which is not the retailer. It's the wholesaler distributor, and the court talks about, so in support of the position that plaintiff's claim must fail because the sale was not made directly to the seat and defendant cites Blackwell, as Proximo does here, and then they go on to say, although the cases cited above, which are the indirect cases, are somewhat analogous, no closely factual Illinois decision has come to our attention, and we look for direction to the aim and boundaries of liability on the statute, so they look at the statute, and ultimately, in conclusion, they say, no problem is present in this case of an injury arising at a time remote from the pecuniary transaction as this very large pot of beer was knowingly provided by the seller at Daniel Wright Woods and could only have been intended for consumption that day when it was attending the picnic. While it is true it did not actually dispense it, in this court's opinion, the defendant, as a wholesaler for all practical purposes, provided a dram where the plaintiff's seats and others could become intoxicated. So that alone is a case that held a wholesaler to be liable under the dram. That sounds distinguishable because the wholesaler provided a large quantity of alcohol that it knew this union would serve to its members, but isn't that different from a manufacturer or distributor that would put bottles of liquor on shelves and not know exactly how many any person would buy? I mean, it seems distinguishable from that. Well, it's the same concept as putting a whole bunch of product into certain stores, a whole bunch of product into the stream of commerce. But they don't know that one group is buying large quantities of alcohol and consuming them like they did in the Peterson case. Correct. It is distinguishable on those grounds. But still, was it holding a wholesaler, a distributor liable under the dram? Potentially liable. Potentially liable. I mean, you know, in this case, if there was a rule in our favor, maybe the jury wouldn't be persuaded by that. And these are all summary judgment cases, by the way, and this is a motion to dismiss, but on our case. But, you know, we're not asking the court to say they are for sure liable, but just that it is a party that is licensed to sell and therefore may be liable under the act. And with that, I respectfully request that you answer the certified question in the affirmative and allow this case to come back down to circuit court so it can be tried by the jury. Thank you. Okay. Thank you for your argument here today. Mr. Seidel, could you address the Peterson case for us? Yes, Your Honor. And could you slow down? Yes, I'm sorry, Your Honor. It's a chronic problem I have. So I'd like to start with Peterson. You know, I think counsel on either side cited the relevant language, which is that for all practical purposes, the wholesaler provided a dram shop. That's a quotation. I'm sorry. The quotation is, the defendant as a wholesaler for all practical purposes provided a dram shop by selling the kegs of beer directly to the union. In that situation, there's no – they deviated from the three-tier legislative scheme. They didn't sell through a retailer who would normally be the last licensed seller who had the proximate connection to the sale of alcohol to the union. Essentially, they just provided kegs of beer for a company picnic. And when a – What's the difference? What's the difference between a wholesaler that provides to the Circle K, who then gives it to people for a way of money, versus the wholesaler who gives it to a union? I think the difference is that in the Peterson case, the employer there knew that the beer was going to be drunk by employees at a company picnic. You know that people are going to buy the liquor from the store. Your Honor, I think that Welch and the other cases that you cited previously establish the principle that you have to have more than a generalized knowledge that alcohol will be consumed in general. And I think Rittmeyer is a good example of the distinction between Peterson and Welch. In Peterson, the employer provided beer for use at a company picnic. They knew which people would be consuming the beer. They knew when it would be happening. There was a connection there that sufficed for liability at the summary judgment stage. In Rittmeyer, someone who attended a party where Rittmeyer had bought a keg – sorry, where someone had bought a keg from a tavern sued and said, you know, you should have known that this person wouldn't have purchased all this beer and consumed it himself. And in that case, the court said, no, it's not enough to know that multiple people will be drinking. You have to know who is going to be drinking. You have to know what group of people, at the very least, will be drinking. You don't have to name all the employees. But that's the difference between when Proxima introduces alcohol that will be consumed in general versus when someone provides alcohol in a closed setting to be consumed by a specific group of people at a specific time. And in that case, it doesn't – I don't think that Peterson is an example of a wholesaler being held liable. It's an example of a dram shop being held liable where the dram shop happened to be a wholesaler. That doesn't happen very often. There are no other cases because that isn't consistent with a legislative scheme. And that's why Peterson is just simply totally irrelevant to this case. Do you think Peterson is an outlier? Well, I'm not sure that it's an outlier. I think it's a factual outlier. It's a very unlikely situation. Because, you know, I think if there were an allegation to complain that Proximo had personally sold the bottle of tequila to the drunk driver, I think we would have a much harder time with this argument. But there is nothing like that. The only allegations to complain related to Proximo are that it is an importer of alcohol and that it's somehow connected to the lingering question. So I think Peterson is very different. There's a couple other points I'd like to quickly address, Your Honor. First, you know, opposing counsel discussed this as a direct sale case. That's certainly not how the case was briefed. He discussed the concept of vertical privity. That's not a concept that has entered the case at all, and it's certainly not anything that there are allegations of the complaint to support. So it's a new theory on appeal, and it shouldn't be considered. And lastly, I'd like to just address the fact that opposing counsel has no explanation for the 1971 amendment that changed away from but-for causation, which is a standard that would be reintroduced by his new theory. And I'd like to address the fact that the equipment exception, which I think under plaintiff's articulation of the meaning of the statute, would be rendered superfluous. If it is the case that a distributor or manufacturer of alcohol who provides equipment is both liable because of — sorry, is liable because of their connection to the alcohol that is consumed, then there is no situation — no practical situation in which someone only provides a tap or a keg with someone else's alcohol in it, such that they wouldn't be liable. This would really never apply. And in particular, if your only connection, your true only connection, was the provision of equipment to deliver alcohol to a customer, then you haven't sold alcohol to a consumer. So if that connection were the only thing that this was talking about, that connection were the only thing being discussed here, but the independent connection of a distributor or manufacturer creating alcohol sufficed, then if you only supplied equipment, you wouldn't be liable, so this would do nothing. And if you supplied the alcohol, then you would still be liable, so this provision would do nothing. So it's actually plaintiff's conception of the statute that renders this superfluous. But I think, ultimately, this case is really a very straightforward one under existing precedent. I think you can address this in several ways, but the easiest would probably be to say that there are no cases which have ever recognized that this group of people, that manufacturers can be liable as manufacturers under the DRAM SHOT Act, which is what the allegations movement have here. All expansions of DRAM SHOT liability have to be made by the legislature, and the policy arguments that have been addressed in this court can't possibly justify a departure from language, departure from precedent, or a departure from that principle. Do you think we reach all those issues in light of the way this has come up on appeal? So, you know, I think in a Rule 308 case, the court is bound to the legal issue that is certified by the district court in general. But courts frequently will resolve the certified question in a way that articulates more than just a yes or no answer. They'll typically explain their reasoning. And when that reasoning fully disposes of a case, the Supreme Court has consistently held that courts can go beyond answering the yes, no of the certified question and explain what result that has. So in Dow v. Gleason and a variety of other cases, the Supreme Court interpreting Rule 308 has held that, you know, when judicial economy requires because of the purpose of Rule 308, if your discussion of when and how manufacturers can be liable and the answer is they can't, it resolves the case. Then it's appropriate to resolve the case and say that it's not. So the relief that you're asking for is answering the question in the negative but also dismissing the case? I think functions would probably be the same. I think if you were to... You have to answer the question. Yes. So, sorry, if you answer the question in the negative, I think... But you're also asking for relief that dismisses the case. We wouldn't say no to that. I think you have the discretion to grant it... This is your... I mean, you have to tell me what you're asking for relief. We would request that, but either way, we would certainly request that the court answer the question in the negative. If the question is just, you know, the court can go beyond that and say that resolves the claims in the case because the claims don't allege any connection by Proximo to the drunk driver beyond the general introduction of alcohol in the stream of commerce, you could definitely say that, and that would be in the interest of judicial economy. It would cleanly resolve this case, which is the purpose of Rule 308. But answering the question, the certified question in the negative, essentially reaches the same result when we go back down to the district court because with that legal conclusion at hand, the case will be dismissed. Okay. Thank you. Thank you. Mr. Seidel, thank you for coming to the courthouse. Ms. Adelson, this matter will be taken under advisement. It's an interesting question of law. We will issue an order in due course. Thank you both for your...